**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

VERNON MURPHY,

                  **Plaintiff,**

        **v.**

THOMAS GIBBONS et al.,

                  **Defendants.**
_____

**1:13-cv-1433**
**(GLS/RFT)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Vincent U. Uba | VINCENT U. UBA, ESQ. |
| 750 Broadway | |
| Albany, NY 12207 | |
| **FOR THE DEFENDANTS:** | |
| HON. JOHN JOSEPH REILLY | JOHN JOSEPH REILLY |
| City of Albany Corporation Counsel | Corporation Counsel |
| City Hall, 24 Eagle Street | ERIC P. SUGAR |
| Albany, NY 12207 | Assistant Corporation Counsel |

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Vernon Murphy commenced this action against defendants

Thomas Gibbons, City of Albany Police Sergeant, Brian Mascaro, City of

Albany Police Officer, and unnamed John Does pursuant to 42 U.S.C.

§ 1983, alleging a host of violations of federal and state law. (Compl., Dkt.

No. 1.)[1]  Pending is defendants' motion for judgment on the pleadings.
(Dkt. No. 12.)  For the reasons that follow, the motion is granted in part and denied in part.

## II.  Background

### A.    Facts[2]

On November 19, 2012, Murphy provided Scott Juarez, his neighbor's boyfriend, a ride to a house where Juarez had been working so that he could retrieve "some items."  (Compl. ¶¶ 1-2.)  Murphy took Juarez to the work site, located on Lark Street in the City of Albany; at no point did Murphy enter the residence, but he approached the back gate and "hollered" for Juarez to "hurry up."  (*Id.* ¶¶ 3-5.)  About ten minutes after Murphy and Juarez left the Lark Street house, they were "apprehended" by City of Albany police officers while driving; the two were thereafter taken to the police station.  (*Id.* ¶ 6.)

Murphy was handcuffed, and returned to the area where he had

---

[1] Notably, Murphy's complaint, which is devoid of any pagination and includes separately numbered paragraphs only for the first thirty-one allegations, is peculiar in form and non-compliant with both the Local Rules of Practice and the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 10(b); N.D.N.Y. L.R. 10.1.  Counsel should be more cautious when drafting pleadings in future litigation.

[2] The facts are drawn from Murphy's complaint and presented in the light most favorable to him.

originally taken Juarez so that he could be identified "by the neighbors." (*Id.* ¶ 7.) Upon his return to the police station, officers asked Murphy to sign a document, to which he responded that "he would need to contact his lawyer before signing anything." (*Id.* ¶ 8.) Police permitted Murphy to call his attorney, Vincent Uba, who also represents Murphy here,[3] and, after the call, Gibbons told Murphy that he was "'free to go [because] we don't have evidence of any wrongdoing on your part.'" (*Id.* ¶¶ 9-10.) Uba met Murphy outside of the police station where the two discussed the fact that Murphy could not afford to pay the impound fee for the return of his vehicle; Uba thereafter unsuccessfully requested that Gibbons waive the impound fee. (*Id.* ¶¶ 11-13.)

Later the same day, after he scrounged up the money needed for release of his impounded vehicle and he retrieved the same, Murphy realized that the police still had his driver's license and vehicle registration, which prompted his return to the police station to request the return of

---

[3] It is noteworthy that, as alleged in the complaint, Uba was intimately involved with the underlying facts of this case. (*See, e.g.*, Compl. ¶¶ 9-13.) The court notes that in this District, the New York Rules of Professional Conduct govern the conduct of attorneys, *see* N.D.N.Y. L.R. 83.4(j), and, aside from a handful of exceptions, New York's ethical rules generally prohibit an attorney from acting "as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. Rules of Professional Conduct rule 3.7, 22 N.Y.C.R.R. § 1200.0.

those items.  (*Id.* ¶ 14.)  Upon his return to the station, Murphy was told by Gibbons: "'Your lawyer just left here, and he pissed me off, now I am going to arrest you, turn around and put your hands behind your back.'"  (*Id.* ¶ 15.)  Gibbons ordered Officer Mascaro to handcuff Murphy, and did not contact Uba to inform him of the arrest despite Gibbons' knowledge that Murphy had retained Uba by virtue of their interaction earlier in the day. (*Id.* ¶¶ 15-16)  Murphy's several requests to call or contact Uba were refused by officers.  (*Id.* ¶¶ 17-18, 23.)  Murphy was also denied access to his counsel at arraignment and a bail hearing, where, instead of retained counsel, he was provided only with "assigned counsel from the Conflict Defender's Office"; defendants also ordered Murphy to be silent during those proceedings.  (*Id.* ¶¶ 19-20, 28-29.)  During his detention at the Albany County Jail, Murphy was denied his medication and told by an unidentified Doe defendant to "'pray to [his] God, Allah to give [him his] medicine.'"  (*Id.* ¶¶ 25-26.)  On July 31, 2013, all of the charges against Murphy were dismissed.  (*Id.* ¶ 31.)

## B.   <u>Procedural History</u>

Murphy filed this suit on November 18, 2013.  (*See generally id.*) Murphy's complaint purports to set forth eight causes of action.  (*Id.* at 7-9.)

As best as the court can discern, Murphy alleges the following claims, all under the banner of 42 U.S.C. § 1983: (1) denial of the right to counsel in violation of the Sixth and Fourteenth Amendments; (2) denial of the indelible right to counsel in violation of the New York State Constitution; (3) denial of the right to be free from unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments and/or the laws of New York in relation to his arrest and detention; (4) denial of the right to be free from unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments and/or New York law in relation to the seizure and retention of his vehicle, driver's license, and vehicle registration "without due process and without probable cause"; (5) a violation of the Fourth and Fourteenth Amendments and/or New York law in relation to his confinement and detention; (6) a violation of the Fourth and Fourteenth Amendments and/or New York law for "maliciously instituting criminal proceedings"; (7) denial of the right to free exercise of religion in violation of the First and Fourteenth Amendments and/or New York law; and (8) a violation of the Fourth and Fourteenth Amendments and/or New York law in relation to "an overly suggestive show-up identification." (*Id.*) Murphy has not pleaded any separate causes of action rooted in state law.

Following joinder of issue, (Dkt. No. 10), but at some time prior to the conclusion of discovery, defendants moved to dismiss Murphy's pleading, relying on certain evidence outside of the pleadings, (Dkt. No. 12).

### III. **Standard of Review**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). For a full discussion of that standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. **Discussion**

As an initial matter, the court notes that defendants' arguments rely upon the notion that the court may go beyond the pleadings in deciding their motion and consider a host of documents from the underlying criminal investigation and prosecution, (Dkt. No. 12, Attach. 10 at 4; Dkt. No. 12, Attachs. 5-9)—a perception that is largely unchallenged by Murphy, who similarly relies upon some of the same documents, and others addressed below. Defendants correctly contend that the court may look to matters of

public record when considering a motion for judgment on the pleadings. (Dkt. No. 12, Attach. 10 at 4); *see Byrd v. City of N.Y.*, No. 04-1396-CV, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (citing *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)); *Pacherille v. Burns*, No. 3:13-cv-789, 2014 WL 3040420, at *1 n.3 (N.D.N.Y. July 3, 2014). "A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). Similarly, decisions of other courts may be judicially noticed. *See Pacherille*, 2014 WL 3040420, at *1 n.3. In accordance with the foregoing, the court takes judicial notice of the following: the order of Albany County Court entered April 9, 2013, (Dkt. No. 12, Attach. 5), the transcript of Murphy's plea hearing, (*id.*, Attach. 6), the order of County Court entered July 31, 2013, (*id.*, Attach. 7), the accusatory instruments,[4] (*id.*, Attach. 8 at 2, 4), and the notice of

---

[4] The court acknowledges Murphy's allegations that one of the supporting affidavits was "fabricated" and that none of the supporting declarations were attached as the accusatory instruments indicated on their faces, (Dkt. No. 19, Attach. 10 at 14, 19.) While the felony complaint plainly indicates that the sources of information and grounds for the complainant's

appearance and request for the return of Murphy's driver's license and vehicle registration dated November 29, 2012, (*id.*, Attach. 9).

The following documents submitted in response by Murphy, who appears to have a fundamental misunderstanding of what may be considered by the court when adjudicating a motion to dismiss under Rule 12(c), are not considered: Uba's declaration, which is rife with improper testimony, (Dkt. No. 19), and certain telephone records, (*id.*, Attach. 2). These documents are clearly not public records such that the court may take judicial notice of them. Finally, while the court could convert the instant motion to one seeking summary judgment and consider the evidence submitted outside of the pleadings and not otherwise falling into the realm of judicial notice, *see* Fed. R. Civ. P. 12(d), it declines to do so given the nascent nature of this action. *See Toliver v. City of N.Y.*, No. 10 Civ. 3165, 2012 WL 7782720, at *4-5 (S.D.N.Y. Dec. 10, 2012).

With this issue settled, the court turns to the complaint. As detailed above, Murphy separately alleges eight causes of action. Before passing

_____

beliefs are "[a]ttached [s]upporting [d]epositions," (Dkt. No. 12, Attach. 8 at 2), the court may not take judicial notice of disputed matters, particularly where, as here, the issue of probable cause is critical to a handful of Murphy's claims. *See Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985). For these reasons, the court does not notice the supporting depositions heavily relied upon by defendants in their arguments that probable cause existed. (Dkt. No. 12, Attach. 10 at 5-8.)

on Murphy's complaint and defendants' arguments in support of dismissal,

Murphy's reliance on violations of New York law in support of his claims, all

of which are brought pursuant to § 1983, are ignored.  Indeed, § 1983

provides liability "only for the deprivation of 'rights, privileges, or immunities

secured by the Constitution and laws' *of the United States*."  *Gonzaga*

*Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis added) (quoting 42

U.S.C. § 1983).  Murphy's claims are addressed, in turn, below.

## A.     First Claim—Denial of Right to Counsel

Defendants seek dismissal of Murphy's first cause of action because,

as Murphy alleges, he was represented by counsel at every stage of the

criminal proceedings,[5] and his complaint fails to meet the basic pleading

standard.  (Dkt. No. 12, Attach. 10 at 14-15.)  As pleaded, Murphy claims

violations of the Sixth and Fourteenth Amendments when defendants

"willfully and deliberately den[ied him] access to his retained counsel in a

felony criminal proceeding."  (Compl. at 7.)  The allegations in the

complaint indicate that Murphy takes issue with the fact that he was denied

representation by his chosen attorney at the outset of his prosecution.  (*Id.*

_____

[5] Defendants also confusingly assert, without any explanation as to why it is important or relevant in this case, that the right to counsel "does not apply in civil cases."  (Dkt. No. 12, Attach. 10 at 14.)  It is clear here that the underlying case was criminal in nature and that Murphy was constitutionally entitled to counsel.

¶¶ 16-19.)

The constitutional right to counsel encompasses the right of the accused to be represented by counsel of his own choice free from state interference—in particular without the prosecutor or police "'act[ing] in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel.'" *See United States v. Stein*, 541 F.3d 130, 154 (2d Cir. 2008) (quoting *Maine v. Moulton*, 474 U.S. 159, 171 (1985)). Despite the fact that the right to counsel does not attach until "'at or after the time that adversary judicial proceedings have been initiated against [the accused],'" *Neighbour v. Covert*, 68 F.3d 1508, 1511 (2d Cir. 1995) (quoting *Kirby v. Illinois*, 406 U.S. 682, 688 (1972)), and that "the right to counsel of one's choice is not absolute," *Greene v. Brown*, No. 06 Civ. 5532, 2007 WL 1589449, at *15 (E.D.N.Y. June 4, 2007), Murphy's factual allegations minimally support a claim that the named defendants acted with unnamed defendants to deny or interfere with Murphy's right to retained counsel of his choice. While certainly not a model of clarity, the complaint asserts that "defendants" colluded with employees of Albany County Jail to deny Murphy the ability to contact Uba, his lawyer, through denied requests to contact Uba and orders that Murphy was "not to speak in front of the court."

(Compl. ¶¶ 16-24.)  Collectively, these allegations plausibly support the claim that Murphy was denied the right to counsel of his choice for some early portion of his criminal case until Uba filed a notice of appearance in late November.[6]  (Dkt. No. 12, Attach. 9 at 2.)

Defendants' arguments that the complaint fails to state a claim of § 1983 conspiracy is inapposite.  (Dkt. No. 12, Attach. 10 at 13-14.)  At this juncture, it is unclear whether any of the Doe defendants are private—*i.e.*, non-state—actors such that Murphy's complaint must be measured against the elements of a private actor/state actor § 1983 conspiracy as urged by defendants.  *See, e.g.*, *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  Accordingly, defendants' motion to dismiss Murphy's first cause of action is denied.

## B.    Second Claim—Denial of Indelible Right to Counsel

Even though not specifically addressed by defendants,[7] consistent

---

[6] It is apparent from both the complaint, (Compl. ¶ 31), and public documents of which the court takes judicial notice, (Dkt. No. 12, Attachs. 5, 6, 7, 9), that Uba appeared as Murphy's counsel at some point in the criminal case.

[7] In fairness, defendants generically argue that, to the extent that the court reads the complaint to allege state law claims, they are subject to dismissal for failure to comply with the notice of claim requirements engrafted in New York General Municipal Law §§ 50-e and 50-i. (Dkt. No. 12, Attach. 10 at 17-18.)  As explained above, the attorney-drafted complaint, which clearly identified § 1983 as the basis for all claims asserted, does not assert any state law claims; instead, it erroneously and, in some instances, fatally pleads violations of state law in support of a § 1983 claim.

with the notion that Murphy's reliance on violation of New York law to support his § 1983 claims is bogus, his second cause of action, alleging only a violation of the New York Constitution's guarantee to the indelible right to counsel, *see* N.Y. Const. art. I, § 6, must be dismissed.

## C.    Third Claim—False Arrest

Defendants contend that Murphy's false arrest claim should be dismissed because the arrest was supported by probable cause.  (Dkt. No. 12, Attach. 10 at 5-8.)  The court disagrees that dismissal is required.

A claim for false arrest or imprisonment brought pursuant to § 1983 "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  To establish a false arrest claim under federal law, a plaintiff must demonstrate that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citations omitted).  "'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for

false arrest, whether that action is brought under state law or under § 1983.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852).

"Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted). More particularly, when confronted with a motion to dismiss under Rule 12(c), a court may find probable cause based upon the pleadings and other matters of which the court may take judicial notice. *See Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007); *EVO Merch. Servs., LLC v. Fire USA Inc.*, No. CV 12-6152, 2014 WL 3950653, at *1

(E.D.N.Y. Aug. 11, 2014).  Indeed, the fact that a grand jury has returned an indictment provides a presumption of probable cause that may be rebutted "*only* . . . by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  *Savino*, 331 F.3d at 72 (quoting *Colon v. City of N.Y.*, 60 N.Y.2d 78, 83 (1983)).

Here, the complaint alleges sufficient facts to support a claim of false arrest.  (Compl. ¶¶ 10, 15.)  Turning to the question of whether the confinement was privileged, which would eviscerate the claim, it is clear from documents of which the court has taken judicial notice, and Murphy's concession, that an indictment was handed up by a grand jury.  (Dkt. No. 12, Attach. 5 at 1; Dkt. No. 19, Attach. 10 at 19.)  The fact of indictment gives rise to a presumption of probable cause.  *See Savino*, 331 F.3d at 72.  However, Murphy's allegation that defendants arrested him in bad faith out of agitation that Uba visited the police station, (Compl. ¶ 15), requires that this branch of defendants' motion to dismiss be denied at this early stage of the litigation.

A few other comments are warranted in light of defendants' arguments that probable cause existed because of eyewitness

14

identification implicating Murphy as one of the assailants in the charged

crimes, information obtained from the owner of the building from which

copper pipes were taken, and Murphy's guilty plea.  (Dkt. No. 12, Attach.

10 at 6-8; Dkt. No. 20 at 4.).  As for the witness identification, as mentioned

above, the court does not take judicial notice of the exhibits that would

support this argument.  *See supra* note 4.  Murphy's guilty plea, which is

judicially noticed, (Dkt. No. 12, Attach. 6), was subsequently vacated, (Dkt.

No. 12, Attach. 7).  Under these circumstances, the court will not rely upon

Murphy's subsequently vacated guilty plea for the establishment of

probable cause.

**D.**     **Fourth Claim—Unlawful Seizure and Retention of Property**

Defendants, who construe Murphy's fourth cause of action as

implicating due process rights, next contend that, because Murphy had

certain state remedies, his claim regarding the return of his property must

be dismissed.  (Dkt. No. 12, Attach. 10 at 10.)  Murphy counters that his

unlawful arrest demonstrates an unlawful search and seizure, and that,

with respect to the retention of his personal property, the state court

remedies are not the exclusive means of redress.  (Dkt. No. 19, Attach. 10

at 15-16.)  The court agrees with defendants that Murphy's claim regarding

15

the illegal retention of his property must be dismissed.

The Due Process Clause of the Fourteenth Amendment "requires that once a criminal proceeding is terminated or it has been found that seized property is not related to or needed for those proceedings, the property must be returned to its owner, unless the government can establish an alternative basis for holding the property." *Escobar v. City of N.Y.*, No. 05-cv-3030, 2008 WL 5157011, at *4 (E.D.N.Y. Dec. 8, 2008) (citing *McClendon v. Rosetti*, 460 F.2d 111, 116 (2d Cir. 1972)); *see Herbert v. City of N.Y.*, No. 12-CV-1096, 2012 WL 3779230, at *1-2 (E.D.N.Y. Aug. 30, 2012). It is also true that a claimant seeking the return of property seized in connection with a New York prosecution may seek return of the property by way of a N.Y. C.P.L.R. art. 78 proceeding. *See In re Lipscomb v. Prop. Clerk of City of Newburgh Police Dep't*, 188 A.D.2d 993, 993-94 (3d Dep't 1992). Where an adequate post-deprivation remedy exists in state court, no due process claim lies. *See Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Here, even though the complaint plainly alleges that Murphy's property was not returned despite the termination of the criminal case and

his verbal and written demands for return, (Compl. ¶¶ 30, 31), the availability of an adequate post-deprivation remedy, *see* N.Y. C.P.L.R. art. 78; *Grullon v. Reid*, No. 97 CIV. 7616, 1999 WL 436457, at *10 (S.D.N.Y. June 24, 1999), *aff'd sub nom. Grullon v. United States*, 22 F. App'x 70 (2d Cir. 2001), requires dismissal of Murphy's due process claim.

### E.     Fifth Claim—False Imprisonment

The same framework and result as recited above with respect to false arrest applies to Murphy's claim of false imprisonment.  *See supra* Part IV.C.  Accordingly, defendants' motion to dismiss this claim is denied.

### F.     Sixth Claim—Malicious Prosecution and Abuse of Process

As to Murphy's sixth claim, defendants argue that dismissal is required as to a malicious prosecution claim because the indictment handed up by a grand jury created a presumption of probable cause that Murphy cannot rebut, and the proceeding, which was disposed of by dismissal of the indictment in the interests of justice, was not terminated in his favor.  (Dkt. No. 12, Attach. 10 at 8-10.)  No claim for abuse of process lies because, according to defendants, Murphy's prosecution was supported by probable cause, which serves as an excuse or justification to the claim, and no collateral objectives—an essential element—have been

pleaded. (*Id.* at 11-13.) The court agrees that dismissal is appropriate as to Murphy's claim of malicious prosecution, but disagrees as to abuse of process.

To prevail on a malicious prosecution claim, a plaintiff must establish that: "(1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice." *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994) (citation omitted); *see Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). "In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook*, 41 F.3d at 80.

Here, the indictment was dismissed in Murphy's criminal case "in the interest of justice" pursuant to N.Y. C.P.L. § 170.40. (Dkt. No. 12, Attach. 7.) Because it is beyond dispute that such dismissals "'cannot provide the favorable termination required as the basis for a claim of malicious

prosecution,'" *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992)), Murphy's malicious prosecution claim must be dismissed.  His abuse of process claim, however, is another matter.  For the same reasons explained above, probable cause, which would serve as a justification to this claim, is not apparent on the record now before the court.  *See supra* Part IV.C.  As for the "collateral objective" element, the complaint alleges that defendants arrested Murphy because Gibbons was "pissed" about Uba visiting the police station.  (Compl. ¶ 15.)  The pleading also asserts that defendants had a "goal of unjustly punishing" Murphy.  (*Id.* ¶ 21.)  These allegations, taken together, plausibly suggest that defendants used legal process—causing Murphy to be arraigned on charges, (*id.* ¶ 19)—for the purpose of retribution, which meets the pleading requirement for the collateral objective prong.  *See Cook*, 41 F.3d at 80; *Savino*, 331 F.3d at 77-78.  Thus, Murphy's abuse of process claim survives.

**G.     Seventh Claim—Free Exercise of Religion**

    Defendants seek dismissal of Murphy's seventh claim because he has failed to allege the necessary elements and the claim is not directed at any named defendant.  (Dkt. No. 12, Attach. 10 at 15-16.)  The court

agrees.

A plaintiff alleging a violation of his right to free exercise "must allege that (i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (citations omitted). Here, Murphy alleges in his complaint that a Doe defendant at the County Jail denied him blood pressure medication, stating: "'I am not going to give you your medicine, pray to your God , [sic] Allah to give you your medicine.'" (Compl. ¶ 26.) There is absolutely no indication that Murphy practices any religion or was otherwise engaged in religious activity. Murphy's post hoc contention that "[i]t can be reasonably inferred that defendant knew [he] is of the Muslim faith, perhaps by noticing [him] carrying out his religious activities," (Dkt. No. 19, Attach. 10 at 21), is not sufficient to save his claim. The pleading fails to allege that Murphy had any protected interest. For this simple reason, the claim must be dismissed.

**H.** **Eighth Claim—Unduly Suggestive Showup Identification**

Murphy's last claim, for which defendants make no specific argument

in support of dismissal, alleges that his Fourth and Fourteenth Amendment rights were violated when defendants "deliberately conduct[ed] an overly suggestive show-up identification . . . , thereby incriminating [him] in an alleged crime which [he] was innocent of."  (Compl. at 9.)  While the court has serious doubts about the viability of such a claim given the pleaded facts, in the absence of any arguments from defendants as to why this claim is infirm, and considering that, under certain circumstances, a plaintiff may have a § 1983 claim related to an improper showup, *see, e.g.*, *Wray v. City of N.Y.*, 490 F.3d 189, 192-93 (2d Cir. 2007), Murphy's eighth cause of action is not dismissed at this juncture.

I.    **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity under the "arguable probable cause" standard.  (Dkt. No. 12, Attach. 10 at 16-17.)  As the court has discussed above, however, probable cause has not been established, and, for the same reasons it is not apparent on the record properly before the court, arguable probable cause is not shown either.  This argument is therefore rejected at this juncture.

**V.  Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

21

**ORDERED** that defendants' motion to dismiss (Dkt. No. 12) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

      **GRANTED** with respect to Murphy's entire second and seventh

      causes of action, and his claims related to the retention of his

      property and malicious prosecution, and those causes of

      actions/claims are **DISMISSED**; and

      **DENIED** in all other respects; and it is further

      **ORDERED** that the parties shall contact Magistrate Judge Randolph

F. Treece to schedule further proceedings in accordance with this

Memorandum-Decision and Order; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 29, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court